ESKOVITZ LAW LLP
Sean Eskovitz (State Bar No. 241877)
seane@eskovitz.com
1217 Wilshire Blvd, # 3683
Santa Monica, CA 90403
Tel: 323.821.5836

Counsel for the Plaintiffs

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

STEPHEN PONS, CAROLINE COLEMAN, AND STANLEY WOLKEN, on behalf of themselves and all others similarly situated,

                    *Plaintiffs*,

           v.

WALTER KIDDE PORTABLE EQUIPMENT INC. d/b/a Kidde Safety Equipment, and BRK BRANDS, INC. d/b/a First Alert,

                    *Defendants*.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Case No. _____

**CLASS ACTION COMPLAINT**

**<u>JURY TRIAL DEMANDED</u>**

## <u>PLAINTIFFS' COMPLAINT</u>

### <u>CLASS ACTION</u>

Plaintiffs Stephen Pons, Caroline Coleman, and Stanley Wolken ("Plaintiffs"), on behalf of themselves and all others similarly situated (the "Class"), bring this complaint against Defendants Walter Kidde Portable Equipment Inc. d/b/a Kidde Safety Equipment ("Kidde") and BRK Brands, Inc. d/b/a First Alert ("First Alert") and allege as follows:

### <u>NATURE OF THE CASE</u>

1.      This case arises out of the false misleading advertising, labeling, and packaging of one of the most important safety products a consumer will ever purchase: home smoke detectors. In

1   virtually every home in America, families install alarms to warn them about dangerous fires so that
2   they may make a safe escape.

3   　　　　2.　　These alarms should be capable of detecting the early signs of a fire long before the
4   family could—otherwise, they serve no purpose.  The deadliest home fires typically begin as slow,
5   smoldering fires that often escape notice until there are large amounts of smoke or flame—and by
6   then, escape is risky or hopeless.  Given that smoldering fires are a particularly common and
7   dangerous type of home fire, any product that is sold as a "smoke alarm" should be able to reliably
8   detect and warn of such a fire long before it becomes hazardous.  And, when consumers purchase
9   any product that is labeled, marketed, and sold as a "smoke alarm," those consumers reasonably
10  expect that such a product will provide adequate warning to reliably protect against common home
11  fires.

12  　　　　3.　　Yet for decades the largest manufacturers of smoke alarms in America, including
13  each of the Defendants, have been making and selling products labeled as "smoke alarms" even
14  though those products are technologically unsuited for this most basic and essential function.

15  　　　　4.　　There are two very different types of technology used in most smoke-alarm products.
16  One is called "ionization" technology, and, under certain conditions, it can detect flame and related
17  heat from hot, flaming fires, but is ineffective at detecting smoke from smoldering fires in a timely
18  fashion.  The other is called "photoelectric" technology, and it is adept at quickly detecting smoke
19  from smoldering fires.  Both technologies have been around for decades.

20  　　　　5.　　Crucially, any product advertised, labeled, and sold as a "smoke alarm" for
21  residential use should have photoelectric technology inside, because—in stark contrast to ionization
22  technology—it can quickly detect and warn of the presence of smoke.  Conversely, an alarm
23  product that uses only ionization technology (an "ionization-only device") cannot effectively detect
24  smoke from slow, smoldering fires.  Because ionization-only devices are not reasonably suited to
25  detect and warn of smoldering fires—a particularly common and dangerous type of home fire—they
26  cannot be truthfully and accurately advertised, labeled, and sold as "smoke alarm" products.

27  　　　　6.　　Defendants have known about the shortcomings of ionization-only devices for many
28  years.  Each Defendant began manufacturing and selling ionization-only devices decades ago, and

they became able to mass-produce them cheaply.  For years, Defendants have also mass-produced photoelectric devices and "hybrid" devices containing both types of technology, but they have manufactured and sold vastly more ionization-only products to American consumers (largely due to their mislabeling of those products).  Consequently, the overwhelming majority of U.S. homes are equipped solely with ionization-only devices.

7.      Decades ago, each Defendant became aware of the all-too-frequent deaths and serious injuries caused by ionization-only devices failing to timely alert home occupants of a smoldering fire.  Despite being advertised, labeled, and sold as "smoke alarms," ionization-only devices sound too late (or do not sound at all) in response to smoldering fires inside a home.  Yet, despite the warnings of fire safety officials around the world, each Defendant has continued to manufacture and sell ionization-only devices labeled "smoke alarms" to an unsuspecting public.  And despite litigation brought by families of victims of those injured or killed in home fires that ionization-only devices failed to timely detect, Defendants typically seal all evidence of their wrongful conduct as part of secret settlements.

8.      With deliberate disregard for the safety of the public, each Defendant continues to sell ionization-only devices to the public deceptively and misleadingly advertised, labeled, and packaged as "smoke alarms."  On the back or bottom of some of their packaging, the Defendants slip in fine print that says that it is optimal to buy both kinds of alarms (ionization and photoelectric).  But such fine-print on the back of an ionization-only device package prominently labeled a "Smoke Alarm" fails to inform reasonable consumers that the product they are buying is unsuitable for timely detection and warning of all types of common home fires.  Indeed, burying this critical safety information in small print underscores Defendants' knowledge that their ionization-only devices—which are conspicuously mislabeled in large print on the front of the packaging as "Smoke Alarms"—provide false and misleading assurances to reasonable consumers.

9.      Today, tens of millions of American families are immediately at risk that a smoldering fire in their home will not be detected in time, even though they bought an ionization-only "smoke alarm" they thought was protecting them.  And even though the Defendants have for decades also mass-produced photoelectric devices—and "hybrid" devices that contain both

ionization and photoelectric technology—they have continued to profit by selling large quantities of ionization-only devices, notwithstanding the dire risks to the public.  Each Defendant has, quite simply and callously, placed profits over people.

10.     Plaintiffs Stephen Pons, Caroline Coleman, and Stanley Wolken are typical purchasers of ionization-only "smoke alarms."  They bought these products to protect themselves, their families, and their homes against fires.  But what they got for their money is anything but the protective products they thought they had purchased.  Instead, the technology inside of their ionization-only devices is unsuitable for protecting them from smoldering fires—a particularly common and dangerous type of home fire—as Defendants Kidde and First Alert have known for decades.

11.     On behalf of millions of families, Stephen, Caroline, and Stanley respectfully ask the Court for relief.  They seek damages for their purchases of ionization-only devices that, based on the Defendants' misrepresentations, they reasonably believed were suitable for detecting smoke during all common home fires, and they want the industry to stop misleadingly and deceptively selling ionization-only devices as "smoke alarms."

## PARTIES

12.     Defendant Walter Kidde Portable Equipment Inc. d/b/a as Kidde Safety Equipment and as Code One ("Kidde") is a Delaware corporation with its principal place of business in Mebane, North Carolina.

13.     Kidde, including its owners, employees, subsidiaries, affiliates, and agents, has for decades developed, designed, manufactured, assembled, marketed, promoted, advertised, warranted, distributed, sold, packaged, and provided instructions for ionization-only devices under various brand names.  At all relevant times, Kidde has conducted substantial business within California and throughout the United States through the advertising, marketing, distribution, and sale of ionization-only devices.

14.     Defendant BRK Brands, Inc. d/b/a as First Alert ("First Alert") is a Delaware corporation with its principal place of business in Aurora, Illinois.

15.     First Alert, including its owners, employees, subsidiaries, affiliates, and agents, has for decades developed, designed, manufactured, assembled, marketed, promoted, advertised, warranted, distributed, sold, packaged, and provided instructions for ionization-only devices under various brand names.  At all relevant times, First Alert has conducted substantial business within California and throughout the United States through the advertising, marketing, distribution, and sale of ionization-only devices.

16.     At all relevant times, Plaintiff Stephen Pons has resided in Alameda, California and has been a citizen of the State of California.  He bought numerous Kidde ionization-only devices online from Amazon's website that were delivered to his home in Alameda, California.

17.     At all relevant times, Plaintiff Caroline Coleman has resided in Watsonville, California and has been a citizen of the State of California.  She bought Kidde ionization-only devices from a Home Depot retail store in Watsonville, California.

18.     At all relevant times, Plaintiff Stanley Wolken—a citizen of the State of Nevada— has owned residential homes in and around Capitola, California.  He bought numerous First Alert ionization-only devices from local retail stores in and around Capitola and San Carlos, California for use in those homes.

## JURISDICTION

19.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because there are more than 100 class members and the aggregate amount in controversy exceeds the sum or value of Five Million Dollars ($5,000,000.00) exclusive of interest, attorneys' fees, and costs, and at least one class member is a citizen of a state different from the state of citizenship of at least one Defendant.

## VENUE & DIVISIONAL ASSIGNMENT

20.     Venue is proper in this judicial District pursuant to 28 U.S.C. § 1391 because a substantial part of the events and omissions giving rise to the claims of the Plaintiffs and the Class occurred in this judicial District.  Moreover, venue is proper in this judicial District because

Plaintiffs purchased ionization-only devices in this District for use in their homes located in this judicial District.

21.     Pursuant to Northern District of California Civil Local Rules 3-2 and 3-5, assignment to the San Francisco or Oakland Divisions of the Northern District of California is proper because a substantial number of the events or omissions that give rise to the claims asserted by the Plaintiffs and Class members occurred in the counties of San Francisco, Alameda, San Mateo, and Sonoma.

## **TOLLING OF APPLICABLE STATUTES OF LIMITATION**

22.     Any applicable statutes of limitation have been tolled by Defendants' knowing, active, and ongoing fraudulent concealment of the facts alleged herein.  Defendants have known of the significant limitations of ionization-only devices since at least 1976.  Since then, however, Defendants have intentionally concealed from, and failed to notify, Plaintiffs, Class members, and the public of the incapability of ionization-only devices to reliably detect and warn of smoldering fires in real-world settings for which the products were purchased.  Despite knowing of these failures of ionization-only devices, Defendants did not acknowledge the problem, and in fact actively concealed it while continuing to deny any wrongdoing.

23.     Defendants were, and are, under a continuous duty to disclose to Plaintiffs and Class members the true character, quality, and nature of their ionization-only devices, including their limitations and unsuitability for use as "smoke alarms," particularly given their deceptive and misleading labeling and packaging as such.  Instead, Defendants actively concealed the true character, quality, and nature of their ionization-only devices, and knowingly made misrepresentations about the quality, reliability, characteristics, and performance of such devices. Plaintiffs and Class members reasonably relied upon Defendants' active concealment of these facts that rendered their statements misleading.

24.     Based on the foregoing, Defendants are estopped from relying on any statutes of limitation in defense of this action.

# FACTUAL ALLEGATIONS

**A.     Ionization and photoelectric devices operate differently and are triggered by different conditions**

25.     Ionization technology was developed in the 1930s.  It detects the presence in the air of very small particulates of gas.  It was first used for commercial purposes in the 1950s.  Products using ionization technology were initially marketed and sold as "product of combustion detectors," and, by the late 1960s, as "smoke alarms."

26.     Ionization devices have two ionization chambers.  One is a closed reference chamber that does not allow the entry of particles, while the other is open to the air.  Americium-241, a radioactive isotope, is used to ionize air molecules inside the chambers so that positive and negative ions flow between charged plates inside each, creating an electric current.

27.     The current should always be the same in each of the two chambers, as they are equally affected by changes in temperature, air pressure, and the aging of the Americium-241.  But when very small particulates (generally less than one micron in size) that are present in heat and flame enter the open chamber, some of the ions attach to the particulates and cannot then carry the current.  An electronic circuit then senses that a current difference has developed between the two chambers, and it sounds the alarm.  It takes millions of the sub-micron particulates to effectuate the difference in current between the two chambers and trigger the alarm.

28.     Photoelectric technology was first developed in the 1970s.  It works very differently from ionization technology.  Photoelectric devices are equipped with light-emitting diodes and light sensors within chambers that are open to the air.  When larger particulates—generally one micron or greater—enter the chamber, they reduce or scatter the light intensity picked up by the sensor, which then triggers the alarm.  These larger particulates are present in all types of smoke.

**B.     Only photoelectric devices—and not ionization devices—reliably detect smoke from smoldering fires, the most common type of residential fire**

29.     Smoldering fires are the most common type of fire in residential settings.  Smoldering fires often happen when people are asleep, and they are thus responsible for far more deaths than flaming fires, which are often kitchen fires that occur while home occupants are cooking and the need to take swift action is readily apparent.

30.     Because smoke from smoldering fires is comprised of particulates that are generally one micron or greater, photoelectric technology detects these fires and sounds an alarm shortly after such fires begin, generally allowing enough time for home occupants who hear the alarm sound to evacuate the burning home.  The exact time of detection will vary depending on the placement of the alarms within the home, but, when used as directed, detection will generally occur within a few minutes of when the fire started.

31.     In contrast, ionization-only devices will not sound unless and until the fire has progressed to a hot, flaming fire that generates enough sub-micron particulates to trigger the alarm. Tests show that a ionization-only device placed in close proximity to photoelectric device often takes 30 minutes or more to sound after the photoelectric device has already sounded—and, by this point, it is often already too late for a person to safely evacuate a home due to the buildup of smoke, toxic gases, and flame.

32.     Notably, ionization-only devices that are placed too close to showers or to kitchen ovens are notorious for generating false alarms, as the rapid accumulation of heat or even steam can cause them to sound even if there is no fire.  False alarms generated by ionization-only devices may prompt residents to disarm those devices, subjecting them to even greater risk of harm from future fires.  Photoelectric devices, in contrast, do not have these problems; 97% of all nuisance alarms are from ionization-only devices.[1]

**C.     Defendants have known for decades of the unsuitability of ionization-only devices for detecting and warning people about smoldering fires**

33.     Various studies from around the world of the response times of both ionization and photoelectric devices in smoldering fires have reached the conclusion that ionization-only devices fail to reliably detect and timely warn of smoldering fires.  As early as 1978, researchers in England conducted smoldering fire tests and found that, on average, photoelectric devices gave warning

---

[1] *See* Walker, S., "Silent Alarms; Deadly Differences," ASHI Reporter, June 2013 (citing NFPA, "False Alarms and Unwanted Activations – US Experience with Smoke Alarms," 2004, Ahrens).

1  substantially sooner than ionization-only devices.[2]  A 1979 test of smoldering mattress fires

2  produced the same results.[3]

3       34.     Throughout the 1980s and early 1990s, researchers from around the world conducted

4  additional studies comparing the average detection of ionization-only devices to smoke from

5  smoldering fires to the average detection time of photoelectric devices.  Those studies indicated that

6  because the detection time was much shorter for photoelectric devices—in fact, some ionization-

7  only devices never responded at all—only photoelectric devices provide adequate warning of a

8  smoldering fire.[4]

9       35.     Fire officials and experts have been warning for years about the unsuitability of

10  ionization technology to timely detect and warn of smoldering fires, a particularly common and

11  dangerous type of home fire.  As a result of such efforts, several states—including Massachusetts,

12  Ohio, and Maine—now require photoelectric or hybrid photoelectric-ionization devices in new

13  residential construction.  At the local level, a variety of jurisdictions throughout the country—

14  including the City of Palo Alto, California—have enacted ordinances requiring photoelectric or

15  hybrid alarms, effectively banning the use of just ionization-only devices in new residential

16  construction.

17       36.     Yet ionization-only device sales remain ubiquitous throughout California and the

18  United States.  Despite their unsuitability for the task, ionization-only devices continue to be sold by

19

20

21  [2] See Babrauskas, V., "Smoke Detectors: Technologies Are NOT of Equal Value nor
    Interchangeable," Fire Safety & Technology Bulletin, Vol. 3, No. 12, December 2008 (citing

22  Kennedy, R.H.; Riley, K.W.P.; Rogers, S.P., "A Study of the Operation and Effectiveness of Fire
    Detectors Installed in the Bedrooms and Corridors of Residential Institutions," Fire Research

23  Station, Fire Research Current Paper 26/78, Borehamwood, England, April 1978).

24  [3] See Babrauskas, V., "Smoke Detectors: Technologies Are NOT of Equal Value nor
    Interchangeable," Fire Safety & Technology Bulletin, Vol. 3, No. 12, December 2008 (citing

25  Schuchard, W.F., "Smoldering Smoke," Fire Journal, Vol. 73, No. 1, 1979).

26  [4] See, e.g., Meland, O. & Lonuik, L., "Detection of Smoke - Full Scale Tests with Flaming and
    Smouldering Fires," Fire Safety Science—Proceedings of the Third International Symposium, July,

27  1991, pp. 975-984; see generally Brown, S.K. & Johnson, P.F., "Smoke Detection of Smoldering
    Fires in a Typical Melbourne Dwelling," Fire Technology, Vol. 22, No. 4, November 1986, pp.

28  295-310; Cote, P.E. & Drouin, J.A., "Smoke and Heat Detector Performance: Field Demonstration
    Tests Results," Fire Journal (January 1984) pp. 34-38, 69.

1  Defendants Kidde and First Alert as "smoke alarms" to unsuspecting American consumers.
2  Defendants' ionization-only devices are typically sold in the same display racks as photoelectric
3  devices or hybrid products, with the pricing lower for ionization-only devices, making them the
4  most attractive option to consumers.  With ionization-only devices typically displayed in retail
5  stores and online side-by-side and/or intermixed with photoelectric-only and hybrid products
6  containing both technologies—and with all such products prominently labeled and packaged as a
7  "Smoke Alarm" product—it is difficult for a reasonable consumer to understand the critical and
8  potentially life-saving differences between the different types of products, or even which type of
9  product he or she is selecting for purchase.  And the fine print disclaimers that typically appear on
10 the back or bottom of each Defendant's packaging explaining the different capabilities of
11 photoelectric and ionization devices—and unfamiliar icons indicating which type of product is
12 inside the package—are not generally understood by reasonable consumers.

13        37.    Thus, most U.S. consumers continue to buy ionization-only devices, and it is
14 estimated that around 90% of the homes in the United States are equipped only with these devices,
15 notwithstanding the availability of alarms with photoelectric technology or hybrid-products
16 containing both ionization and photoelectric technology.  Despite numerous lawsuits filed by
17 families of deceased or injured victims of home fires that ionization-only devices failed adequately
18 to detect, there is very little public awareness among reasonable consumers of the shortcomings of
19 ionization-only devices, in part because the Defendants, as part of secret settlements, typically seal
20 all evidence of their wrongful conduct to hide it from public view.

21        38.    In sum, despite knowing for decades of the unsuitability of ionization-only devices
22 for timely detection and warning of smoldering fires, Defendants have continued—and continue—
23 to sell millions of ionization-only devices annually to consumers in California and throughout the
24 United States.  Defendants Kidde and First Alert each have done so callously and with a deliberate
25 disregard for the safety of the American public.

26

27

28

**D.     The Defendants' deceptive labeling and packaging of their ionization-only devices**

39.     From the outset of their manufacturing and sale of ionization-only devices, both Kidde and First Alert have advertised, labeled, and packaged those devices as "smoke alarm" products.  That is deceptive and misleading to reasonable consumers.  Based on their function and technology, ionization-only devices do not detect or sound timely alarms to warn people about the smoke from smoldering fires.  Indeed, the most material information about ionization-only devices that any reasonable consumer needs to know is that the product is unsuitable for timely detecting smoke from and sounding an alarm warning of a smoldering fire—a particularly common and dangerous type of home fire—and that a photoelectric device is necessary for this purpose.  Yet Defendants label and package their ionization-only devices in ways that lead reasonable consumers to believe they are suitable, by themselves, for use as household "smoke alarms" when they are not.

1.     <u>Kidde's Deceptive and Misleading Labeling and Packaging of Its "FIREX" Brand Ionization-Only Devices</u>

40.     Below is a representative example—in this instance, from Kidde's FIREX "Model #i9070"—of Kidde's packaging of its FIREX-branded ionization-only products.

41.     The cuboid, six-sided cardboard-box package consists of a front panel, back panel, right-side panel, left-side panel, top panel, and an underneath panel.  The front panel of the package—the side most likely to be displayed to, and viewed by, a reasonable consumer shopping either in a retail store or online—describes its contents in large type as a "Smoke Alarm" by "FIREX."  Prominently displayed in the upper left corner of the front panel are the features: "9V Battery Operated" and "FRONT BATTERY DOOR."  In considerably smaller print in the lower left corner of the front panel is the descriptor "Ionization Technology."  The labeling on the front panel leads a reasonable consumer to believe that the product inside is suitable, by itself, for detecting smoke from all types of common home fires:

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15



16  The left-side panel of the package (below left) lists various "authorities" the product supposedly
17  "complies with."  The right-side panel of the package (below right) prominently displays the
18  "FIREX" brand name, with "Smoke Alarm" repeated immediately below it.
19
20
21
22
23   
24
25
26
27
28

42.     The top panel of the packaging contains only the "Kidde" manufacturer name, and the descriptor "Smoke Alarm," again, in large print:



43.     The back panel of the package yet again describes the product as a "Smoke Alarm" and lists its various "Features and Benefits."  In large print at the bottom of the back panel the following language appears: "**Install confidence** with advanced alarms from a world leader in fire safety."  Listed among the various "Technical Specifications" is "Smoke Sensor: Ionization," with no explanation of what an "Ionization" smoke device is or of its capabilities and limitations.



44.     Instead, the packaging buries such information on the underneath panel: a part of the package unlikely to be viewed or read by a reasonable consumer shopping either in a retail store or online for a smoke alarm.  On the left side of the underneath panel appears the following text: "WARNING: Removal of the smoke alarm battery will render this smoke alarm inoperative. Battery door will not close unless battery is installed correctly."  Adjacent to that text on the underneath panel—and appearing in print considerably smaller than the print used for the descriptor "Smoke Alarm" on the product's front panel, top panel, right-side panel, and back panel—is the following:

> Industry experts recommend that both ionization and photoelectric smoke alarms be installed to help ensure maximum detection of the various types of fires that can occur within the home.  **Ionization sensing alarms** may detect invisible fire particles (associated with fast flaming fires) sooner than photoelectric alarms.  **Photoelectric sensing alarms** may detect visible fire particles (associated with slow smoldering fires) sooner than ionization alarms.



45.     As the California Supreme Court has emphasized, "labels matter."[5]  That is "because consumers rely on the accuracy of those representations in making their buying decisions."[6] Kidde's deceptive and misleading advertising, labeling, and packaging of its FIREX-branded ionization-only devices as a "Smoke Alarm" has the capacity, likelihood, and tendency to deceive and confuse a reasonable consumer into believing that the product is suitable, by itself, for detecting and timely warning of smoke from any common type of home fire.

---

[5] *Kwikset v. Super. Ct.*, 246 P.3d 877, 889 (Cal. 2011).
[6] *Id.*

46.     For numerous reasons, Kidde's fine-print recommendation language, appearing on the underneath panel of the six-sided packaging box of its "FIREX" ionization-only devices, underscores the deceptive and misleading nature of Kidde's prominent, large-print descriptor "Smoke Alarm" on the front of the box—the side most likely to be viewed by a reasonable consumer shopping in a retail store or online.  Those reasons include, without limitation, the following:

(a)     Reasonable consumers do not—and cannot reasonably be expected to— read fine print on the underneath panel of a six-sided cardboard-box when purchasing a simple smoke alarm product that typically sells for $30 or less;

(b)     The fine-print recommendation language on the underneath panel contradicts the descriptor "Smoke Alarm" that appears in large print on the front panel of the package— and also on the top panel, right-side panel, and back panel—which suggests to a reasonable consumer that the ionization-only devices inside, by itself, is suitable for detecting and timely warning of smoke from all types of common home fires;

(c)     The fine-print recommendation that "both ionization and photoelectric smoke alarms be installed to help ensure maximum detection" is insufficient to inform reasonable consumers that the product they are purchasing is not suitable for detecting smoke from smoldering fires, a particularly common and dangerous type of home fire; and

(d)     The disclaimer that "[p]hotoelectric sensing alarms may detect visible fire particles (associated with slow smoldering fires) sooner than ionization alarms" fails to inform reasonable consumers that, as a wide-body of testing and research establishes, photoelectric devices do *in fact* detect smoke from smoldering fires significantly more quickly on average than ionization-only devices.

47.     In sum, the fine-print recommendation on the underneath panel of Kidde's FIREX-brand packaging, where a reasonable consumer is unlikely to see it, confirms the misleading and deceptive nature of the "Smoke Alarm" product labeling on the front, most prominent side of the packaging.  As such, reasonable consumers are misled by the totality of Kidde's labeling and packaging into believing that the "Smoke Alarm" product inside, by itself, is suitable for detecting

and timely warning of smoke from any common type of home fire.  A reasonable consumer under the circumstances will often purchase the lower-priced alarm option, which is an ionization-only device.  Plaintiffs Stephen Pons, Caroline Coleman, and Class members were misled at the time of purchase by Kidde's labeling and packaging into believing that the product they purchased was suitable, by itself, for detecting and timely warning of smoke from any common type of home fire.

> 2.  Kidde's Deceptive and Misleading Labeling and Packaging of Its "Kidde" Brand Ionization-Only Device

48.  Below is a representative example—in this instance, from Kidde's Model i9010—of the "Kidde" branded ionization-only device.

49.  The package is two-sided, with a front and a back.  The front of the package is a single cardboard sheet with a clear plastic bubble in which the product is visible with "Worry-Free" and "Smoke Alarm" in large print in the upper-right corner.  The labeling on the front panel leads a reasonable consumer to believe that the product inside is suitable, by itself, for detecting smoke from all types of common home fires.  And although a small "ionization technology" icon appears on the front, the reference to "ionization technology"—and its limitations as compared to photoelectric technology for detecting home fires—is not generally understood by reasonable consumers.  The front of the package is as follows:



- 16 -
COMPLAINT

50.     The back of the package also describes in large print the product as "Worry-Free" and "Zero worries."  Listed in fine print among the "Technical Specification" is a reference to "Smoke Sensor: Ionization."  In even finer print below the "Technical Specifications," the following text appears:

> Industry experts recommend that both ionization and photoelectric smoke alarms be installed to help ensure maximum detection of the various types of fires that can occur within the home. **Ionization sensing alarms** may detect invisible fire particles (associated with fast flaming fires) sooner than photoelectric alarms.  **Photoelectric sensing alarms** may detect visible fire particles (associated with slow smoldering fires) sooner than ionization alarms.



51.     For numerous reasons, Kidde's fine-print language on the back of its two-sided packaging underscores and confirms the deceptive and misleading nature of Kidde's labeling on the front of the package—the side most likely to be viewed by a reasonable consumer shopping in a retail store or online—that the device inside is a "Smoke Alarm" and is "Worry-Free."  Those reasons include, without limitation, the following:

(a)     Reasonable consumers do not—and cannot reasonably be expected to read—the fine print on the back of packaging when purchasing a simple smoke alarm product that typically sells for $30 or less;

(b)     The fine-print language on the backside of the package contradicts the prominent descriptors "Smoke Alarm" and "Worry-Free" that appear in large print on the front panel of the package—and also at the top of the backside—which suggest to a reasonable consumer that the product inside, by itself, is suitable for detecting and timely warning of smoke from any common type of home fire;

(c)     The fine-print recommendation that "both ionization and photoelectric smoke alarms be installed to help ensure maximum detection" is insufficient to inform a reasonable consumer that the product he or she is purchasing is not suitable for detecting smoke from smoldering fires, a particularly common and dangerous type of home fire; and

(d)     The disclaimer that "[p]hotoelectric sensing alarms may detect visible fire particles (associated with slow smoldering fires) sooner than ionization alarms" fails to inform the reasonable consumer that, as a wide-body of testing and research establishes, photoelectric devices do *in fact* detect smoke from smoldering fires significantly more quickly on average than ionization-only devices.

52.     In sum, the fine-print recommendation on the back of the "Kidde" brand ionization-only device, where a reasonable consumer is unlikely to see it, confirms the misleading and deceptive nature of the "Smoke Alarm" product labeling on the front, most prominent side of the packaging.  As such, reasonable consumers are misled by the totality of Kidde's labeling and packaging into believing that the "Smoke Alarm" product inside, by itself, is suitable for detecting and timely warning of smoke from any common type of home fire.  A reasonable consumer under

the circumstances will often purchase the lower-priced option, which is an ionization-only device. Plaintiffs Stephen Pons, Caroline Coleman, and Class members were misled at the time of purchase by Kidde's labeling and packaging into believing that the product they purchased was suitable, by itself, for detecting and timely warning of smoke from any common type of home fire.

> 3. <u>Kidde's Deceptive and Misleading Labeling and Packaging of Its "CODE ONE" Brand Ionization-Only Device</u>
>
> *(a)  Kidde's "CODE ONE" Cardboard-Box Packaging*

53.     Below is a representative example—in this instance, from Kidde's "CODE ONE" Model i9040—of Kidde's cardboard-box packaging of its "CODE ONE" branded ionization-only devices.

54.     The package consists of a front panel, back panel, right-side panel, left-side panel, top panel, and an underneath panel.

55.     The front panel of the package—the side most likely to be displayed to, and viewed by, a reasonable consumer shopping in a retail store or online—describes in large-print, all-capitalized wording the product inside as a "SMOKE ALARM" in English, with "ALARMA DE HUMO" immediately underneath.  The front panel also states in highlighted text: "Basic Protection



1   from Smoke and Fire."  The labeling on the front panel leads a reasonable consumer to believe that

2   the product inside is suitable, by itself, for detecting smoke from all types of common home fires.

3         56.    The left-side panel of the package (below left) lists various features of the product:

4   "Compact Design," "Easy Installation," "85 Decibel Horn," "Flashing Red Light," "Test Button,"

5   and "Low Battery Indicator."  The right-side panel (below right) again describes the product as a

6   "SMOKE ALARM" in English and "ALARMO DE HUMO" in Spanish.  At the very bottom of the

7   right-side panel appear the following words: "Ionization Technology," with no explanation on that

8   panel of what that means or its significance for smoke-detection efficacy.




9

10

11

12

13

14

15

16

17

18

19

20

21

22         57.    The top panel of the packaging contains the "CODE ONE" brand name, and the

23   descriptor "SMOKE ALARM" in English and "ALARMA DE HUMO" underneath in Spanish,

24   along with the words "Basic Protection":

25



26

27

28

58.     The bottom panel of the package contains only a Universal Product Code for the product.

59.     The back panel of the package describes in large-print, all-capitalized wording the product inside as a "SMOKE ALARM" in English and underneath, in smaller print, as a "ALARMA DE HUMO" in Spanish.  To the left of the large-print descriptor "SMOKE ALARM" appear the words "Basic Protection from Smoke and Fire."  Underneath, in considerably smaller print, the back panel includes the following language:

> Leading authorities recommend that both ionization and photoelectric smoke alarms be installed to help insure maximum detection of the various types of fires that can occur within the home. Ionization sensing alarms may detect invisible fire particles (associated with fast flaming fires) sooner than photoelectric alarms.  Photoelectric sensing alarms may detect visible fire particles (associated with slow smoldering fires) sooner than ionization alarms.



60.     Kidde's deceptive and misleading advertising, labeling, and packaging of its "CODE ONE" branded ionization-only device as a "SMOKE ALARM" has a capacity, likelihood, or tendency to deceive or confuse a reasonable consumer into believing that the product inside is suitable, by itself, for detecting and timely warning of smoke from any common type of home fire.

61.     For numerous reasons, Kidde's fine-print recommendation language on the back of the six-sided packaging box for its "CODE ONE" branded product underscores and confirms the deceptive and misleading nature of Kidde's prominent descriptor "Smoke Alarm" on the front of the box—the side most likely to be viewed by a reasonable consumer shopping in a retail store or online.  Those reasons include, without limitation, the following:

      (a)     Reasonable consumers do not—and cannot reasonably be expected to—read fine print on the back panel of a six-sided cardboard-box package when purchasing a simple smoke alarm product that typically sells for $30 or less;

      (b)     The fine-print recommendation language contradicts the prominent descriptor "Smoke Alarm" that appears in large print on the front panel of the package—and also on the side panel, top panel, and back panel—which suggests to a reasonable consumer that the product inside, by itself, is suitable for detecting and timely warning of smoke from any common type of home fire;

      (c)     The fine-print recommendation does not inform a reasonable consumer that the product inside the package is an ionization-only product that does not include photoelectric technology;

      (d)     The fine-print recommendation that "both ionization and photoelectric smoke alarms be installed to help insure maximum detection" is insufficient to inform a reasonable consumer that the product he or she is purchasing is not suitable for detecting smoke from smoldering fires, a particularly common and dangerous type of home fire; and

      (e)     The disclaimer that "[p]hotoelectric sensing alarms may detect visible fire particles (associated with slow smoldering fires) sooner than ionization alarms" fails to inform the reasonable consumer that, as a wide-body of testing and research establishes,

photoelectric devices do *in fact* detect smoke from smoldering fires significantly more quickly on average than ionization-only devices.

62.     In sum, the fine-print recommendation on the back of Kidde's "CODE ONE"-branded ionization-only device, where a reasonable consumers is unlikely to see it, confirms the misleading and deceptive nature of the "Smoke Alarm" product labeling on the front, most prominent side of the packaging.  As such, reasonable consumers are misled by the totality of Kidde's labeling and packaging into believing that the "Smoke Alarm" product inside, by itself, is suitable for detecting and timely warning of smoke from any common type of home fire.  A reasonable consumer under the circumstances will often purchase the lower-priced option, which is an ionization-only device, and will be misled by Kidde's labeling and packaging of its "CODE ONE"-branded ionization-only devices into believing that the product they are purchasing is suitable, by itself, for detecting and timely warning of smoke from any common type of home fire.

*(b)  Kidde's "CODE ONE" Two-Sided Packaging*

63.     Below is a representative example—in this instance, from Kidde's "CODE ONE" Model i9010—of Kidde's two-sided packaging of its "CODE ONE" branded ionization-only device.

64.     The package is two-sided, with a front and a back.  The front of the package is a single cardboard sheet with a clear plastic bubble in which the product is visible with "SMOKE ALARM" prominently displayed in large bold print at the top.  The labeling on the front of the package leads a reasonable consumer to believe that the product inside is suitable, by itself, for detecting smoke from all types of common home fires.  Emphasizing this deceptive and misleading message, underneath the large-print descriptor "Smoke Alarm," the words "Ten years of worry free protection" appear alongside "Maintenance Free."  And although a small "Ionization Technology" icon appears at the bottom, the reference to "ionization technology"—and its limitations as compared to photoelectric technology for detecting home fires—is not generally understood by reasonable consumers.  The front of the package is as follows:

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17



18    65.    The back of the package also describes, in large print, the product as a "Smoke

19  Alarm," and touts its "10 Year Lithium Battery."  The backside also lists various "Alarm Features,"

20  but does not mention that the product inside contains only ionization technology.  The column on

21  the right side of the back includes the following fine print:

22
23          Industry experts (such as the NFPA), strongly recommend that both
            ionization and photoelectric smoke alarms be installed to help insure
24          maximum detection of the various types of fires that can occur within the
            home. Ionization sensing alarms may detect invisible fire particles
25          (associated with fast flaming fires) sooner than photoelectric alarms.
            Photoelectric sensing alarms may detect visible fire particles (associated with
            slow smoldering fires) sooner than ionization alarms.
26          Where required by applicable law, codes, or standards for the specified
            occupancy, approved single- and multiple-station smoke alarms shall be
27          installed as follows: (1)  In all sleeping rooms. (2) Outside of each separate
            sleeping area, in immediate vicinity of the sleeping rooms. (3) On each level
28          of the dwelling unit, including basements.  Exception: In existing one- and

two-family dwelling units, approved smoke alarms powered by batteries are permitted.

This product is designed to detect products of combustion using the ionization technique.  It contains 0.9 microcurie of Americium 241, a radioactive material.



66.     For numerous reasons, Kidde's fine-print recommendation language, appearing on the backside of the package, underscores and confirms the deceptive and misleading nature of Kidde's prominent descriptor "Smoke Alarm" on the front of the package—the side most likely to be viewed by a reasonable consumer shopping in a retail store or online.  Those reasons include, without limitation, the following:

(a)     Reasonable consumers do not—and cannot reasonably be expected to—read fine print on the back of packaging when purchasing a simple smoke alarm product that typically sells for $30 or less;

(b)     The fine-print recommendation language on the back of the package contradicts the prominent descriptor "Smoke Alarm" that appears on the front panel—and also at the top of the backside—which suggests to a reasonable consumer that the product inside, by itself, is suitable for detecting and timely warning of smoke from any type of common home fire;

(c)     The disclaimer that "[p]hotoelectric sensing alarms may detect visible fire particles (associated with slow smoldering fires) sooner than ionization alarms" fails to inform the reasonable consumer that, as a wide-body of testing and research establishes, photoelectric devices do *in fact* detect smoke from smoldering fires significantly more quickly on average than ionization-only devices.

67.     In sum, the fine-print recommendation on the back of Kidde's "CODE ONE"-branded ionization-only device, where a reasonable consumer is unlikely to see it, confirms the misleading and deceptive nature of the "Smoke Alarm" product labeling on the front, most prominent side of the packaging.  As such, reasonable consumers are misled by the totality of the labeling and packaging into believing that the "Smoke Alarm" product inside is suitable, by itself, for detecting and timely warning of smoke from any common type of home fire.  A reasonable consumer under the circumstances will often purchase the lower-priced option, which is an ionization-only device, and will be misled by Kidde's labeling and packaging of its "CODE ONE"-branded ionization-only devices into believing that the product they are purchasing is suitable, by itself, for detecting and timely warning of smoke from any common type of home fire.

1

        4.    <u>Kidde's Deceptive and Misleading Labeling and Packaging of Its "10 Year Worry-Free Smoke Alarms" Three-Pack of Ionization-Only Devices</u>

2

3

68.    Below is a representative example of Kidde's packaging of its "10 Year Worry-Free Smoke Alarms" box containing three ionization-only devices.

4

5

69.    The cuboid, six-sided cardboard-box package consists of a front panel, back panel,

6

right-side panel, left-side panel, top panel, and an underneath panel.  The front panel of the

7

package—the side most likely to be displayed to, and viewed by, a reasonable consumer shopping

8

either in a retail store or online—describes its contents in large type as "10 Year Worry Free Smoke

9

Alarms."  Prominently displayed on the upper left corner of the front panel is the descriptor: "10

10

Year Longlife."  In considerably smaller print in the lower left corner of the front panel is the

11

descriptor "Ionization Technology," with no explanation of what an "Ionization" smoke device is or

12

of its capabilities and limitations.  The labeling on the front panel leads a reasonable consumer to

13

believe that the product inside is suitable, by itself, for detecting smoke from all types of common

14

home fires:

15

16

17

18

19

20

21

22

23

24

25

26

27

28



COMPLAINT

70.     Notably, despite the reference to "Contractor 3-Pack" on the front of the box (the same wording also appears on the right and left sides), the product is not sold only to contractors or construction-industry professionals.  Rather, at Home Depot stores—and, upon information and belief, at other retail chains throughout the country—this three-pack of Kidde ionization-only devices is marketed, advertised, displayed, and sold to ordinary retail consumers alongside, and intermixed with, other Kidde-branded smoke-detection products that do not contain any reference to "Contractor" on the packaging.

71.     The right panel of the box describes its contents as a "10 Year Worry-Free Smoke Alarm," and lists various authorities the product allegedly "Complies with":



72.    The left panel of the box repeats the product description "Smoke Alarm":



73.    The top panel of the box includes a fold-up handle that sets forth only the "Kidde" manufacturer name and the descriptor "Smoke Alarm":



74.     The back panel of the package yet again describes the product as a "Smoke Alarm" and lists its various "Features and Benefits."  In large print at the bottom of the back panel the following language appears: "Ten Years. No battery changes. Zero worries." Listed among the various "Technical Specifications" is "Smoke Sensor: Ionization," with no explanation of what an "Ionization" smoke device is or of its capabilities and limitations:



75.     Instead, the packaging buries such information on the underneath panel: a part of the package unlikely to be viewed or read by a reasonable consumer shopping either in a retail stores or online for a smoke alarm.  At the top of the underneath panel appears the following text in fine print:

Industry experts recommend that both ionization and photoelectric smoke alarms be installed to help ensure maximum detection of the various types of fires that can occur within the home.

**Ionization sensing alarms** may detect invisible fire particles (associated with fast flaming fires) sooner than photoelectric alarms.

**Photoelectric sensing alarms** may detect visible fire particles (associated with slow smoldering fires) sooner than ionization alarms.



76.    For numerous reasons, Kidde's fine-print recommendation language, appearing on the underneath panel of the six-sided packaging box of its three-pack of ionization-only devices, underscores the deceptive and misleading nature of Kidde's prominent, large-print descriptor "Smoke Alarm" on the front of the box—the side most likely to be viewed by a reasonable consumer shopping in a retail store or online.  Those reasons include, without limitation, the following:

(a)     Reasonable consumers do not—and cannot reasonably be expected to— read fine print on the underneath panel of a six-sided cardboard-box when purchasing simple smoke alarm products that typically sells for $30 or less for each unit;

(b)     The fine-print recommendation language on the underneath panel contradicts the descriptor "Smoke Alarm" that appears in large print on the front panel of the package— and also on the top panel, right-side panel, left-side panel, and back panel—which suggests to a reasonable consumer that the ionization-only devices inside, by itself, is suitable for detecting and timely warning of smoke from all types of common home fires;

(c)     The fine-print recommendation that "both ionization and photoelectric smoke alarms be installed to help ensure maximum detection" is insufficient to inform reasonable consumers that the product they are purchasing is not suitable for detecting smoke from smoldering fires, a particularly common and dangerous type of home fire; and

(d)     The disclaimer that "[p]hotoelectric sensing alarms may detect visible fire particles (associated with slow smoldering fires) sooner than ionization alarms" fails to inform reasonable consumers that, as a wide-body of testing and research establishes, photoelectric devices do *in fact* detect smoke from smoldering fires significantly more quickly on average than ionization-only devices.

77.     In sum, the fine-print recommendation on the underneath panel of Kidde's three-pack box, where a reasonable consumer is unlikely to see it, confirms the misleading and deceptive nature of the "Smoke Alarm" product labeling on the front, most prominent side of the packaging. As such, reasonable consumers are misled by the totality of Kidde's labeling and packaging into believing that the "Smoke Alarm" product inside, by itself, is suitable for detecting and timely warning of smoke from any common type of home fire.  A reasonable consumer under the circumstances will often purchase the lower-priced alarm option, which is an ionization-only device.  Plaintiffs Caroline Coleman and Class members were misled at the time of purchase by Kidde's labeling and packaging into believing that the product they purchased was suitable, by itself, for detecting and timely warning of smoke from any common type of home fire.

1

2

      5.      <u>First Alert's Misleading and Deceptive Labeling and Packaging</u>
             <u>of Its Ionization-Only Device</u>

3

4

78.     Below is a representative example—in this instance, from First Alert's "Cat. 1039796" product—of First Alert's packaging of its ionization-only devices.

5

6

7

8

9

10

11

79.     The package is two-sided, with a front and a back.  The front of the package is a single cardboard sheet with a clear plastic bubble in which the product is visible with "SMOKE ALARM" prominently displayed in large bold print at the top.  The labeling on the front panel leads a reasonable consumer to believe that the product inside is suitable, by itself, for detecting smoke from all types of common home fires.  That is not changed by the presence, in the lower-right quadrant on the front in fine print, of a symbol that apparently stands for ionization, with no explanation of what that means or its significance in terms of smoke-detection efficacy:

12

13

14

15

16

17

18

19

20

21

22

23



24

25

26

27

80.     At the bottom of the back of the package appears, in fine print, a description of "ionization sensors" and "photoelectric sensors," and the statement "For maximum protection, use both types of sensing technologies."  But absent from this fine-print description is any indication that the product inside the package does not include photoelectric technology and that the

28

ionization-only device inside is unsuitable for detecting smoke from smoldering fires, a particularly

common and dangerous type of home fire:



81.     First Alert's deceptive and misleading advertising, labeling, and packaging of its

ionization-only device as a "Smoke Alarm" product has a capacity, likelihood, or tendency to

deceive or confuse a reasonable consumer into believing that the product is suitable, by itself, for

detecting and timely warning of smoke from any common type of home fire.

82.     For numerous reasons, First Alert's fine-print language on the back of the package

describing ionization and photoelectric technology and noting that industry experts recommend

using both underscores and confirms the deceptive and misleading nature of First Alert's prominent

descriptor "Smoke Alarm" on the front of the package—the side most likely to be viewed by a

reasonable consumer shopping in a retail store or online.  Those reasons include, without limitation,

the following:

1       (a)     Reasonable consumers do not—and cannot reasonably be expected to— read

2 fine print on the back of packaging when purchasing a simple smoke alarm product that

3 typically sells for $30 or less;

4       (b)     The fine-print language on the back of the package contradicts the prominent

5 descriptor "Smoke Alarm" that appears in large print on the front panel of the package;

6       (c)     Even if a consumer did read the fine-print on the back, nothing in the fine-

7 print language or anywhere else on First Alert's packaging informs the reasonable consumer

8 that the "Smoke Alarm" product inside is an ionization-only device; and

9       (d)     The fine-print language on the back of the package is insufficient to inform a

10 reasonable consumer that the product is not suitable for detecting smoke from smoldering

11 fires, a particularly common and dangerous type of home fire.

12       83.    In sum, the fine-print recommendation on the back of First Alert's packaging of its

13 ionization-only devices, where a reasonable consumer is unlikely to see it, confirms the misleading

14 and deceptive nature of the "Smoke Alarm" product labeling on the front, most prominent side of

15 the packaging.  As such, reasonable consumers are misled by the totality of First Alert's labeling

16 and packaging into believing that the "Smoke Alarm" product inside is suitable, by itself, for

17 detecting and timely warning of smoke from any common type of home fire.  A reasonable

18 consumer will often purchase the lower-priced option, which is an ionization-only device.  Plaintiff

19 Stanley Wolken and Class members were misled at the time of purchase by First Alert's labeling

20 and packaging into believing that the "Smoke Alarm" product they purchased was suitable, by

21 itself, for detecting and timely warning of smoke from any common type of home fire.

22

23       6.    <u>First Alert's Misleading and Deceptive Packaging and Labeling</u>
                       <u>of Its Combination Smoke/Carbon Monoxide "Alarm" Products</u>

24       84.    The following is a representative example—in this instance, from First Alert's

25 Model SC9120B product—of First Alert's packaging and labeling of ionization-only devices that

26 also contain a carbon monoxide detector.

27

28

85.     The package is two-sided, with a front and a back.  The front of the package is a single cardboard sheet with a clear plastic bubble in which the product is visible with "SMOKE & CARBON MONOXIDE ALARM" prominently displayed in large bold print at the top.  The labeling on the front panel leads a reasonable consumer to believe that the product inside is suitable, by itself, for detecting smoke from all types of common home fires.  That is not changed by the presence, in the lower-right quadrant on the front in fine print, of a symbol that apparently stands for ionization, with no explanation of what that means or its significance in terms of smoke-detection efficacy:



86.     At the bottom of the back of the package appears, in very fine print, a description of "ionization sensors" and "photoelectric sensors" and the statement "For maximum protection, use both types of sensing technologies."  But absent from this fine-print description is any indication that the product inside the package does not include photoelectric technology and that the ionization-only device inside is unsuitable for detecting smoke from smoldering fires, a particularly common and dangerous type of home fire:



87.     First Alert's deceptive and misleading advertising, labeling, and packaging of its ionization-only device as a "Smoke & Carbon Monoxide Alarm" product has a capacity, likelihood,

or tendency to deceive or confuse a reasonable consumer into believing that the product is suitable, by itself, for detecting and timely warning of smoke from any common type of home fire.

88.     For numerous reasons, First Alert's fine-print language on the back of the package describing ionization and photoelectric technology and noting that industry experts recommend using both underscores and confirms the deceptive and misleading nature of First Alert's prominent descriptor "Smoke Alarm" on the front of the package—the side most likely to be viewed by a reasonable consumer shopping in a retail store or online.  Those reasons include, without limitation, the following:

(a)     Reasonable consumers do not—and cannot reasonably be expected to— read fine print on the back of packaging when purchasing a simple smoke alarm product that typically sells for $30 or less;

(b)     The fine-print language on the back of the package contradicts the prominent descriptor "Smoke Alarm" that appears in large print on the front panel of the package.

(c)     Even if a consumer did read the fine-print on the back, nothing in it informs a reasonable consumer that the "Smoke Alarm" product inside is an ionization-only device; and

(d)     The fine-print language on the back of the package is insufficient to inform a reasonable consumer that the product is not suitable for detecting smoke from smoldering fires, a particularly common and dangerous type of home fire.

In sum, the fine-print recommendation on the back of First Alert's packaging of its ionization-only devices, where a reasonable consumer is unlikely to see it, confirms the misleading and deceptive nature of the "Smoke & Carbon Monoxide Alarm" product labeling on the front, most prominent side of the packaging.  As such, reasonable consumers are misled by the totality of First Alert's labeling and packaging into believing that the "Smoke Alarm" product inside is suitable, by itself, for detecting and timely warning of smoke from any common type of home fire. A reasonable consumer will often purchase the lower-priced option, which is an ionization-only device.  Plaintiff Stanley Wolken and Class members were misled at the time of purchase by First

1   Alert's labeling and packaging into believing that the "Smoke Alarm" product they purchased was

2   suitable, by itself, for detecting and timely warning of smoke from any common type of home fire.

3
4   **E.     Plaintiffs reasonably bought ionization-only devices for protection from smoldering fires that these products do not provide**

5        89.     At all relevant times, each Defendant has been aware of the significant limitations of

6   ionization-only devices at detecting in a timely fashion smoke emitted by smoldering home fires.

7   Despite advertising, labeling, and packaging ionization-only devices as "Smoke Alarm" products to

8   the general consuming public, Defendants have been aware at all relevant times that ionization-only

9   devices are unsuitable, by themselves, for timely alerting home occupants to the presence of smoke

10  from a smoldering fire.  Each Defendant manufacturer has profited at the expense of the safety of

11  Plaintiffs Stephen Pons, Caroline Coleman, and Stanley Wolken; the Class members; and the

12  general public by deceptively and misleadingly advertising, labeling, and packaging their

13  ionization-only devices as "Smoke Alarm" products.

14        **Stephen Pons's Purchases of Kidde Ionization-Only Devices**

15        90.     On three different occasions between August 2019 and September 2021, Plaintiff

16  Stephen Pons purchased online from Amazon—a pass-through supplier of Kidde ionization-only

17  devices—a total of eleven (11) Kidde ionization-only devices to protect his young children, wife,

18  and himself in the event of a house fire.  Specifically, Stephen placed the following online orders

19  via Amazon's website for delivery to his home in Alameda, California:

20        (a)  **August 27, 2019 (shipped 8/28/19)** — Stephen purchased three "Kidde Worry-Free

21             120V Hardwired Smoke & Carbon Monoxide Detector Alarm With Lithium Battery

22             Backup," identified as Model i12010SCO, for $34.95 each.  (According to the order

23             details provided by Amazon, these items were sold by Bright Stuff.)

24        (b)  **June 5, 2020 (shipped 6/8/20)** — Stephen ordered on the Amazon website three "Kidde

25             21026514 Worry-Free Interconnect Ionization Sensor Smoke Alarm" for $25.95 each.

26             (According to the order details provided by Amazon, these items were sold by Express

27             Electric.)

28

(c) **September 13, 2021 (shipped 9/14/21)** — Stephen purchased three "Kidde Smoke Detector, Lithium Battery Powered Smoke Alarm" units for $22.32 each (sold by Amazon.com Services LLC); one "Kidde Smoke & Carbon Monoxide Detector, Combination Smoke & CO Alarm with Lithium Battery" for $39.99 (sold by Homegood Shop); and one "Kidde Smoke & Carbon Monoxide Detector, Hardwired with Lithium Battery Backup" for $42.48 (sold by Amazon.com Services LLC).

91.     Stephen was focused on replacing the smoke alarms in the home he and his wife had recently purchased and moved into with their children—an older home made largely out of wood. The packaging and labeling of the Kidde ionization-only devices Stephen purchased was the same, or substantively the same, packaging and labeling of the Kidde products depicted and described above.  In selecting the Kidde products for purchase, Stephen reasonably believed, based on the "Smoke Alarm" descriptor prominently displayed on the packaging and in the product descriptions on the Amazon website, that he was buying products that would provide timely detection and warning of all common types of home fires.  The packaging descriptor "Smoke Alarm" Stephen relied upon when making these three purchases was deceptive, misleading, and likely to confuse a reasonable consumer—and did in fact confuse Stephen, a reasonable consumer—for the reasons detailed above.

92.     Upon information and belief, the "Smoke Alarm" product descriptions Stephen reviewed on Amazon's website before purchasing the Kidde ionization-only devices were (a) provided by Kidde or its authorized representatives to Amazon and the other sellers identified in the order details, or (b) prepared by Amazon as a pass-through supplier and/or the other sellers identified in the order details based upon the product description "Smoke Alarm" prominently displayed on Kidde's product packaging.

93.     When each Amazon shipment containing the Kidde ionization-only devices he had purchased online arrived at his house, Stephen opened the boxes and reviewed the packaging of each shipped item to confirm that they were the same "Smoke Alarm" product he had ordered online.  And on each occasion they were: Stephen had purchased what Kidde's packaging prominently labeled on the front of the package as a "Smoke Alarm."

**<u>Caroline Coleman's Purchases of Kidde Ionization-Only Devices</u>**

94.     On February 2, 2023, Plaintiff Caroline Coleman purchased four Kidde ionization-only devices from a Home Depot retail store in Watsonville, California, which is located within this judicial District.  Specifically, Caroline purchased a three-pack of Kidde "10 Year Worry Free" Model i9010 ionization-only devices for $54.97 and one "Firex"-branded hardwired ionization-only device for $19.97.  The packaging and labeling of the "Firex"-branded Model i9070 ionization-only device Caroline purchased is the same as the packaging depicted and described at Paragraphs 40 through 47 above, except that the device Caroline purchased is hardwired rather than battery powered.  The packaging of the three-pack of Kidde-branded ionization-only devices Caroline purchased is the same as the packaging depicted and described at Paragraphs 68 through 77 above.

95.     Caroline purchased these Kidde products on February 2, 2023, to install them in her home and, thereby, protect against home fires.  In selecting the Kidde products for purchase, Caroline reasonably believed based on the "Smoke Alarm" descriptor prominently displayed on the packaging that she was buying products that would provide timely detection and warning of all common types of home fires, thereby protecting her and her family.  The descriptor "Smoke Alarm" Caroline relied upon when making these purchases was deceptive, misleading, and likely to confuse a reasonable consumer—and did in fact confuse Caroline, a reasonable consumer—for the reasons detailed above.

**<u>Stanley Wolken's Purchases of First Alert Ionization-Only Devices</u>**

96.     Since November 8, 2019, Plaintiff Stanley Wolken has purchased from retail stores in and around Capitola and San Carlos, California approximately five or six First Alert ionization-only devices—including four First Alert combination "Smoke & Carbon Monoxide Alarm" Model SC9120B devices—to protect his residence in Capitola and other homes he owns and rents in the area.  The packaging and labeling of the four First Alert Model SC9120B combination ionization-only device/carbon monoxide detection products Stanley purchased was the same, or substantively the same, as the packaging and labeling of the First Alert Model SC9120B product depicted and described in Paragraphs 84 through 88 above.

97.     In selecting the First Alert products for purchase, Stanley reasonably believed, based on the "Smoke Alarm" descriptor prominently displayed on the packaging, that he was buying products that would provide timely detection and warning of all common types of home fires.  The descriptor "Smoke Alarm" Stanley relied upon in making these purchases was deceptive, misleading, and likely to confuse a reasonable consumer—and did in fact confuse Stanley, a reasonable consumer—for the reasons detailed above.

*************

98.     In sum, even if Stephen, Caroline, and Stanley had carefully examined all parts of the package—something that a reasonable consumer under the circumstances would not do—they would still reasonably be unaware that the ionization-only device inside would not timely detect and warn of the presence of smoke from a smoldering fire.  Given that the labeling and packaging deceptively describes in large print that the product inside is a "Smoke Alarm," Stephen, Caroline, and Stanley did not realize that the product they were purchasing was not suitable for this purpose. This deception was material: If Defendants had not misrepresented this fact, Stephen, Caroline, and Stanley—and the Class members—would not have purchased, or would not have purchased on the same terms, these ionization-only devices.

## CLASS ALLEGATIONS

99.     Plaintiffs bring this action on behalf of themselves and all other similarly situated persons pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3), and/or (b)(1), (b)(2), and/or (c)(4).  This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of those provisions.

### A.  Composition of the Class

100.     Plaintiffs Stephen Pons, Caroline Coleman, and Stanley Wolken seek to represent the following Class:

> All persons who purchased in California, whether online or in a retail store, a product (1) with ionization technology as its only means of detecting smoke or fire; (2) made, marketed, distributed, and/or sold by Kidde or First Alert; (3) and labeled as a "smoke alarm," including combination carbon monoxide and smoke alarm devices.  Excluded from the Class are all persons who allege personal injury or property damage arising out of the failure of such a device; Defendants and their subsidiaries and affiliates; all persons who make a timely election to be excluded from the Class; governmental entities; and the Judge to whom this case is assigned

1   and his/her immediate family.

2   101.   Plaintiffs reserve the right to revise the Class definition based upon information

3   learned through discovery or if further investigation reveals that the Class should be expanded,

4   divided into subclasses, or modified in any other way.

5   **B.   The Class Satisfies the Requirements of Fed. R. Civ. P. 23**

6   102.   Certification of Plaintiffs' claims for class-wide treatment is appropriate because

7   Plaintiffs can prove the elements of their claims on a class-wide basis using the same evidence as

8   would be used to prove those elements in individual actions alleging the same claims.

9   103.   This action has been brought and may be properly maintained on behalf of the Class

10   proposed herein under Federal Rule of Civil Procedure 23.

11   **(i)   Numerosity**

12   104.   In accordance with Federal Rule of Civil Procedure 23(a)(1), the members of the

13   Class are so numerous that individual joinder of all Class members is impracticable.  While the

14   exact number of Class members is currently unknown, and can only be ascertained through

15   appropriate discovery, the members of the Class are likely to number in the millions, and the

16   disposition of the Class members' claims in a single action will provide substantial benefits to all

17   parties and to the Court.  Class members may be notified of the pendency of this action by

18   recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic

19   mail, internet postings, and/or published notice.

20   **(ii)   Commonality and Predominance**

21   105.   In accordance with Federal Rules of Civil Procedure 23(a)(2) and 23(b)(3), this

22   action involves common questions of law and fact, which predominate over any questions affecting

23   individual Class members, including, without limitation:

24   (a) Whether Defendants engaged in the conduct alleged herein;

25   (b) Whether Defendants' marketing and labeling of their ionization-only devices is

26   false or misleading;

27

28

(c) Whether Defendants' marketing and labeling of their ionization-only devices is likely to deceive a reasonable consumer about the level of protection provided by such devices;

(d) Whether Defendants' conduct violates California law as asserted herein;

(e) Whether Plaintiffs and the other Class members are entitled to money damages and the amount of such damages;

(f) Whether Plaintiffs and the other Class members are entitled to punitive or exemplary damages and the amount of such damages;

(g) Whether Defendants should be required to reimburse losses, pay damages, and/or pay treble damages as a result of the above-described practices; and

(h) Whether Plaintiffs and the other Class members are entitled to declaratory relief and injunctive relief to prevent future violations of the law by Defendants.

**(iii)    Typicality**

106.    In accordance with Federal Rule of Civil Procedure 23(a)(3), Plaintiffs' claims are typical of the other Class members' claims because, among other things, all Class members were comparably injured through Defendants' wrongful conduct as described herein.

**(iv)    Adequacy**

107.    In accordance with Federal Rule of Civil Procedure 23(a)(4), Plaintiffs are adequate Class representatives because their interests do not conflict with the interests of the other members of the Class they seek to represent; Plaintiffs have retained counsel competent and experienced in complex class action litigation; and Plaintiffs intend to prosecute this action vigorously. The interests of the Class will be fairly and adequately protected by Plaintiffs and their counsel.

**(v)    Declaratory and Injunctive Relief**

108.    In accordance with Federal Rule of Civil Procedure 23(b)(2), Defendants have acted or refused to act on grounds generally applicable to Plaintiffs and the other members of the Class, thereby making appropriate final injunctive relief and declaratory relief with respect to the Class as a whole, as described below.

1          **(vi)    Superiority**

2          109.    In accordance with Federal Rule of Civil Procedure 23(b)(3), a class action is

3    superior to any other available means for the fair and efficient adjudication of this controversy, and

4    no unusual difficulties are likely to be encountered in the management of this class action. The

5    damages or other financial detriment suffered by Plaintiffs and the other Class members are

6    relatively small compared to the burden and expense that would be required to individually litigate

7    their claims against Defendants, so it would be impracticable for Class members to individually

8    seek redress for Defendants' wrongful conduct.  Even if Class members could afford individual

9    litigation, the burden on the court system would be enormous and unwarranted.  Individualized

10   litigation creates a potential for inconsistent or contradictory judgments, and increases the delay and

11   expense to all parties and the court system.  By contrast, the class action device presents far fewer

12   management difficulties, and provides the benefits of single adjudication, economy of scale, and

13   comprehensive supervision by a single court.

14

15                                  **COUNT I**
                        **Violation of California's Unfair Competition Law**
16                          Bus. & Prof. Code §§ 17200, *et seq*.
                               (Against All Defendants)

17         110.    Plaintiffs hereby reallege and incorporate by reference the allegations in the

18   preceding paragraphs as if fully set forth herein.

19         111.    Each Defendant is a person subject to California's Unfair Competition Law, Bus. &

20   Prof. Code §§ 17200, *et seq*. ("UCL").  The UCL provides, in relevant part: "Unfair competition

21   shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive,

22   untrue or misleading advertising . . . ."

23         112.    Each Defendant violated—and continues to violate—the "unlawful" prong of the

24   UCL by violating California's Consumers Legal Remedies Act, §§ 1750, *et seq*.  ("CLRA") as

25   described in Count III herein.

26         113.    Each Defendant also violated—and continues to violate—the "fraudulent" prong of

27   the UCL by deceptively and misleadingly advertising, labeling, and packaging its ionization-only

28   devices as  "Smoke Alarm" products, which is likely to lead a reasonable consumer to believe that

the products provide timely detection and warning of smoke from all common types of home fires when in fact they do not.

114.    Plaintiffs and the Class members have suffered economic harm, *i.e.*, lost money or property, as a result of each Defendant's UCL violations because they would not have purchased ionization-only devices, or would not have purchased them on the same terms, if the facts concerning the products had not been misleadingly and deceptively presented in each Defendant's advertising, labeling, and packaging of its ionization-only devices.  Plaintiffs and the Class members seek to avoid such harm in the future when purchasing home smoke alarms.  Yet they cannot make informed purchasing decisions about what types of products to purchase as long as the Defendants continue their misleading and deceptive advertising, labeling, and packaging practices.

115.    Under the UCL, Plaintiffs and the Class members are entitled to injunctive relief with respect to Defendants' future conduct—specifically, an order enjoining Defendants from continuing their misleading and deceptive advertising, labeling, and packing practices with respect to ionization-only devices as detailed herein.

116.    Plaintiffs and the Class members have no adequate remedy at law with respect to the prospective injunctive relief they seek to prevent future harm from Defendants' misleading and deceptive advertising, labeling, and packing practices with respect to ionization-only devices as detailed herein.

**COUNT II**
**Violation of California's False Advertising Law**
Bus. & Prof. Code §§ 17500, *et seq*.
<u>(Against All Defendants)</u>

117.    Plaintiffs hereby reallege and incorporate by reference the allegations in the preceding paragraphs as if fully set forth herein.

118.    Each Defendant is a manufacturer subject to California's False Advertising Law, Bus. & Pro. Code §§ 17500, *et seq*. ("FAL").

119.    Each Defendant violated the FAL by publicly disseminating misleading and false advertising by labeling, packaging, and selling their ionization-only devices as "Smoke Alarm" products such that a reasonable consumer is led to believe that the products provide timely detection

and warning of smoke from all common types of home fires, when in fact they do not.  The ionization-only devices purchased by Plaintiffs and the Class thus failed to conform with the labeling, packing, and advertising by each Defendant.

120.    Each Defendant's misleading and false advertising statements were disseminated to increase sales of its ionization-only devices.

121.    Each Defendant knew or should reasonably have known that its advertising, labeling, and packaging of ionization-only devices as a "Smoke Alarm" was deceptive, false, untrue, and misleading to reasonable consumers.

122.    Each Defendant publicly disseminated the false and misleading advertising, labeling, and packaging as part of a plan or scheme and with the intent to create a market for, and sales of, its ionization-only devices.

123.    Plaintiffs and the Class members have suffered economic harm, *i.e.*, lost money or property, as a result of these violations of the FAL because: (a) they would not have purchased ionization-only devices, or would not have purchased them on the same terms, if the facts concerning the product had not been deceptively and misleadingly presented in each Defendant's advertising, labeling, and packaging of the product; and (b) the ionization-only devices they purchased did not conform to representations of "Smoke Alarm" set forth in each Defendant's labeling, packaging, and advertising of its ionization-only devices.

124.    Pursuant to the FAL, Plaintiffs and the Class members seek an order of this Court permanently enjoining each Defendant from continuing to publicly disseminate false and misleading advertising, marketing, labeling, and packaging with respect to ionization-only devices as detailed herein.

125.    Plaintiffs and the Class members have no adequate remedy at law with respect to the prospective injunctive relief they seek to prevent future harm from Defendants continuing to publicly disseminate false and misleading advertising, labeling, and packing practices with respect to ionization-only devices as detailed herein.

1

2
### COUNT III
**Violation of California's Consumer Legal Remedies Act**
Civil Code §§ 1750, *et seq*.
<u>(Against All Defendants)</u>

3

4    126.    Plaintiffs hereby reallege and incorporate by reference the allegations in the

5    preceding paragraphs as if fully set forth herein.

6    127.    Each Defendant is a person subject to California's Consumer Legal Remedies Act,

7    Civil Code §§ 1750, *et seq*. ("CLRA").

8    128.    The CLRA prohibits, among other things, (a) "[r]epresenting that goods or services

9    have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do

10   not have"; (b) "[r]epresenting that goods or services are of a particular standard, quality or grade or

11   that goods are of a particular style or model, if they are not,"; and (c) "[a]dvertising goods or

12   services with intent not to sell them as advertised."  Each Defendant violated these provisions by

13   misrepresenting, through its advertising, labeling, and packaging, its ionization-only devices as

14   "Smoke Alarm" products, which leads a reasonable consumer to believe that the products provide

15   timely detection and warning of smoke from all common types of home fires when in fact they do

16   not.

17   129.    Plaintiffs and the Class members are consumers who lost money or property as a

18   result of these violations because they would not have purchased the ionization devices, or would

19   not have purchased them on the same terms, if the facts concerning the product had not been

20   misleadingly and deceptively presented in each Defendant's advertising, labeling, and packaging of

21   its ionization-only devices—in other words, Plaintiffs and the Class did not receive what they paid

22   for.

23   130.    With deliberate disregard for the safety of the public, each Defendant continues to

24   sell ionization-only devices that are deceptively and misleadingly advertised, labeled, and packaged

25   as "Smoke Alarms," despite Defendants having known for decades that those products are

26   unsuitable for detecting smoldering fires—a particularly common and dangerous type of home fire.

27   In so doing, each Defendant has acted outrageously and callously, motivated by greed and avarice.

28

131.    Prior to the filing of this Complaint, counsel for Plaintiffs served CLRA notice letters on each Defendant that complied in all respects with California Civil Code § 1782(a). Plaintiffs sent each Defendant their CLRA notice via certified mail, return receipt requested, advising each Defendant that it is in violation of the CLRA and that it must (a) notify all California consumers that upon request, Defendant will refund to them the price they paid for each ionization-only device; and (b) cease to engage in the methods, acts, and practices with respect to each Defendant's advertising, packaging, and labeling of ionization-only devices alleged to be in violation of the CLRA.  Each Defendant was further advised that in the event that the relief requested was not provided within thirty (30) days, Plaintiffs would file claims against them under the CLRA seeking, among other relief, compensatory and punitive damages.  Neither Defendant agreed to provide the requested relief, and more than thirty (30) days has passed since the mailing of the CLRA notices.

132.    On June 8, 2023, in response to Plaintiffs' CLRA notice, counsel for First Alert sent undersigned counsel an email purporting to attach images of First Alert's current ionization-only device packaging provided by First Alert.  Strikingly, however, the images attached to counsel's email were of First Alert's photoelectric-only devices, not its ionization-only devices—the subject of the CLRA notice and the email correspondence.  That First Alert and its counsel confused First Alert's photoelectric device packaging with its ionization-only device packaging further underscores the confusing and misleading nature of First Alert's ionization-only device packaging, labeling, marketing, and advertising.

133.    Pursuant to the CLRA, Plaintiffs and Class members are entitled to all damages proximately caused by each Defendant's conduct, including the unjustified price paid by Plaintiffs and Class members for ionization-only devices.  Plaintiffs are entitled to damages as they show themselves to have sustained and the jury shall find, together with punitive damages, and their cost of suit, including reasonable attorneys' fees.

## **REQUEST FOR RELIEF**

WHEREFORE, Stephen Pons, Caroline Coleman, and Stanley Wolken, individually and on behalf of the members of the Class, respectfully request that the Court enter judgment in their favor and against the Defendants as follows:

A.  Certification of the proposed Class, including appointment of Plaintiffs' counsel as Class Counsel;

B.  An order declaring that Defendants' conduct violates the statutes referenced herein;

C.  An order finding in favor of Plaintiffs and the Class on all Causes of Action asserted herein;

D.  An order enjoining Defendants from continuing the unlawful, misleading, and deceptive practices alleged in this Complaint;

E.  An order requiring that Defendants be financially responsible for notifying all Class members about the true nature, and limitations, of ionization-only devices;

F.  An award of compensatory, statutory, exemplary, and punitive damages in amounts to be determined by the Court and/or jury;

G.  An award of treble damages;

H.  An award of prejudgment and post-judgment interest on all amounts awarded;

I.  An order awarding Plaintiffs and the Class their reasonable attorneys' fees, litigation expenses, and costs; and

J.  Such other or further relief as the Court deems just and appropriate.

## **JURY TRIAL DEMANDED**

Plaintiffs hereby demand a jury trial for all claims so triable.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Dated:  July 10, 2023

Respectfully submitted,

ESKOVITZ LAW LLP


By:  /s/Sean Eskovitz
Sean Eskovitz
(State Bar No. 241877)
1217 Wilshire Blvd # 3683
Santa Monica, CA 90403
Tel: +1.323.821.5836
E-mail:  seane@eskovitz.com

*Counsel for Plaintiffs and the Class*

COMPLAINT