IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

<table>
<tr><td>STEPHEN PONS, et al.,</td><td>Case No. 23-cv-03436-MMC</td></tr>
<tr><td>Plaintiffs,</td><td></td></tr>
<tr><td>v.</td><td>**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**</td></tr>
<tr><td>WALTER KIDDE PORTABLE EQUIPMENT INC., et al.,</td><td></td></tr>
<tr><td>Defendants.</td><td></td></tr>
</table>

Before the Court is defendants Walter Kidde Portable Equipment, LLC d/b/a Kidde Safety Equipment ("Kidde") and BRK, LLC d/b/a First Alert's ("First Alert") "Motion for Summary Judgment" ("Motion"), filed September 9, 2025, pursuant to Rule 56 of the Federal Rules of Civil Procedure. Plaintiffs Stephen Pons, Caroline Coleman, Charles Bellavia, and Terri Kletzman, on behalf of themselves and a putative class, have filed opposition, to which defendants have replied.

The matter came on regularly for hearing on March 13, 2026. Devin S. Anderson, Yaffa A. Meeran, and Neil A. Joseph of Kirkland & Ellis LLP appeared on behalf of defendant Kidde. Robert J. Herrington of Greenberg Traurig, LLP appeared on behalf of defendant First Alert. Sean Eskovitz of Eskovitz Law LLP and Alison K. Van Horn of Aegis Law Group LLP appeared on behalf of plaintiffs.

The Court, having considered the parties' respective written submissions and considered the arguments of counsel made at the hearing, hereby rules as follows.

## BACKGROUND

The present dispute concerns the manner in which defendants, both of which are manufacturers of fire detection equipment, sell their respective products. In particular, plaintiffs challenge defendants' use of the words "smoke alarm" as a descriptor on their

products' packaging. Based thereon, plaintiffs bring a single claim under California's Consumer Legal Remedies Act ("CLRA"), California Civil Code §§ 1750 et seq., alleging such use "leads a reasonable consumer to believe that the products provide timely detection and warning of smoke from all common types of home fires when in fact they do not." (See Doc. No. 110 ("Second Amended Complaint" or "SAC") ¶ 118.)

## LEGAL STANDARD

### A. Rule 56

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, a "court shall grant summary judgment if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." See Fed. R. Civ. P. 56(a).

The Supreme Court's 1986 "trilogy" of Celotex Corp. v. Catrett, 477 U.S. 317 (1986), Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986), and Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574 (1986), requires that a party seeking summary judgment show the absence of a genuine issue of material fact. Once the moving party has done so, the nonmoving party must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." See Celotex, 477 U.S. at 324 (internal quotation and citation omitted). "When the moving party has carried its burden under Rule 56[ ], its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586. "If the [opposing party's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Liberty Lobby, 477 U.S. at 249-50 (citations omitted). "[I]nferences to be drawn from the underlying facts," however, "must be viewed in the light most favorable to the party opposing the motion." See Matsushita, 475 U.S. at 587 (internal quotation and citation omitted).

United States District Court
Northern District of California

2

**B. CLRA**

The CLRA prohibits, <u>inter alia</u>, "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have." <u>See</u> Cal. Civ. Code. § 1770(a)(5). Claims under the CLRA are governed by the "reasonable consumer standard," which requires a plaintiff to show "members of the public are likely to be deceived." <u>See</u> <u>McGinity v. Procter & Gamble Co.</u>, 69 F.4th 1093, 1097 (9th Cir. 2023) (internal quotation and citation omitted). "The reasonable consumer standard requires more than a mere possibility that the [challenged language] might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner." <u>Id.</u> (internal quotation and citation omitted). Rather, such standard "requires a probability that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." <u>See</u> <u>id.</u> (internal quotation and citation omitted).

### DISCUSSION

There are two principal types of residential fires: (1) smoldering fires, which begin slowly and ultimately flame, and (2) flaming fires, which begin rapidly with a flame. (<u>See</u> SAC ¶¶ 2, 4.) Correspondingly, there are two principal types of smoke alarms: (1) photoelectric alarms, which are more effective at detecting smoldering fires, and (2) ionization alarms, which are more effective at detecting flaming fires. (<u>See</u> <u>id.</u> ¶ 4.) It is undisputed that both types of alarms have been sold for years. (<u>See</u> <u>id.</u> ¶ 4; <u>see also</u> Doc. No. 180 ("Mot.") at 2:23.)

In bringing the instant motion, defendants, citing the approval they have received for those sales, argue plaintiffs' CLRA claim fails in light of the "safe-harbor doctrine." (<u>See</u> Mot. at 21:13-14.)

As the California Supreme Court has explained, "[i]f the Legislature has permitted

*United States District Court*
*Northern District of California*

United States District Court
Northern District of California

certain conduct…courts may not override that determination." See Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co., 20 Cal.4th 163, 182 (Cal. 1999). Consequently, as that Court further explained, "when specific legislation provides a 'safe harbor,' plaintiffs may not use the general unfair competition law to assault that harbor." See id.; see also Dinan v. SanDisk LLC, 844 Fed. App'x 978, 979 (9th Cir. 2021) (noting, "[t]hough Cel-Tech concerned only the Unfair Competition Law, later decisions have made clear that this safe harbor doctrine also applies to the Consumer Legal Remedies Act"). Further, as the Ninth Circuit has made clear, "regulations can create safe harbors" as well. See Davis v. HSBC Bank Nevada, N.A., 691 F.3d 1152, 1166 n.3 (9th Cir. 2012).

In the instant case, defendants argue legislation, namely, California Health and Safety Code § 13114 and regulations implemented thereunder by the California State Fire Marshal pursuant to statutory delegation, constitute a regulatory scheme under which the sale of the products challenged here have been approved. (See Mot. at 21:21-22:2.)

California Health and Safety Code § 13114 provides, in relevant part, as follows:

(a) The State Fire Marshal, with the advice of the State Board of Fire Services, shall adopt regulations and standards as he or she may determine to be necessary to control the quality and installation of fire alarm systems and fire alarm devices marketed, distributed, offered for sale, or sold in this state;

(b)(1): No person shall market, distribute, offer for sale, or sell any fire alarm system or fire alarm device in this state unless the system or device has been approved and listed by the State Fire Marshal.[1]

---

[1] The permission required to create a safe harbor need not be expressed in affirmative terms. Rather, such permission may also be expressed by a conditional prohibition. See Cal. Bus. & Prof. Code § 12500.5 (providing "[i]t shall be unlawful to sell or use for commercial purposes any weight or measure…that has not first been so approved by the [California Department of Food and Agriculture]"); Alvarez v. Chevron Corp., 656 F.3d 925, 929 (9th Cir. 2011) (finding safe harbor based on § 12500.5).

United States District Court
Northern District of California

See Cal. Health & Safety Code § 13114.

In accordance therewith, the State Fire Marshal has promulgated regulations that "provide the criteria…for approval and listing of household fire alarm systems and household fire alarm devices." See 19 C.C.R. § 741. To begin with, the State Fire Marshal repeats, in essence, the Legislature's restriction, see id. § 743 (providing "[n]o person shall market, distribute, offer for sale, or sell any fire alarm system, or fire alarm device unless such system or device has been previously approved and listed by the State Fire Marshal"), and, in connection therewith, has promulgated a series of regulations setting forth, in detail, the requirements for obtaining such approval.

First, any application for such approval must "be accompanied by a manufacturer's test report issued by a State Fire Marshal approved testing organization." See id. § 209(b); see also id. §§ 213, 214 (setting forth requirements for approved testing organizations). In addition, "the State Fire Marshal may require that sample specimens, taken from regular production, be submitted for evaluation." See id. § 209. Further, as part of the approval process, any "equipment designed for use in a household fire warning system," such as the products challenged here[2], is required to "conform with the provisions of NFPA 72 National Fire Alarm Code," see id. § 756, which standard requires such equipment satisfy specified "UL"[3] standards (see Anderson Decl. Ex. A-32 (NFPA

---

[2] The applicable regulations define "household fire warning system" as encompassing "devices that produce an audible alarm signal in the household for the purpose of notifying the occupants of the presence of a fire so they may evacuate the premises." See 19 C.C.R. § 745.

[3] UL Standards and Engagements ("UL") is an organization that "convene[s] and facilitate[s] Technical Committee meetings" to "develop" and "publish[]" product safety standards. (See Doc. No. 180-1 ("Anderson Decl.") Ex. A-5 (Dep. Tr., UL 30(b)(6) witness) at 4:1-5.)

72 National Fire Alarm and Signaling Code) at 20[4] (providing "[s]moke [a]larms" must "detect abnormal quantities of smoke…in compliance with applicable standards such as…UL 217"); see also id. Ex. A-33 (California Office of State Fire Marshal "Listing Category and Applicable Standard") at 5 (California State Fire Marshal's listing of UL 217 as applicable standard)).

In the instant case, defendants have submitted undisputed evidence that each of the challenged products has been certified to the UL 217 standard by testing organizations approved by the Fire Marshal, and were approved and listed, i.e., certified, by the State Fire Marshal pursuant to the above-discussed statute and regulations. (See, e.g., Doc. No. 180-35 ("Gonzalez Decl.") Ex. B-15 (State Fire Marshal's certification approving and listing challenged alarm); see also Gonzalez Decl. ¶ 7 (stating "[e]ach Kidde ionization smoke alarm model sold in California was…listed and approved by the California State Fire Marshal"); Doc. No. 180-56 ("Devine Decl.") ¶ 17 (stating "First Alert plaintiffs' devices were…listed as allowed to be marketed, sold and distributed by the California State Fire Marshal").)[5]

In response, plaintiffs argue said certifications do not afford defendants a safe harbor from the claim brought here because "none speak to the propriety of [d]efendants' labeling and selling ionization devices as 'smoke alarms.'" (See Doc. No. 190 ("Opp.") at 21:12-15.) In other words, according to plaintiffs, no "California governmental entity has

---

[4] With respect to exhibits, the citations herein are to the page numbers assigned at the top of each page by this district's electronic filing system.

[5] All of defendants' challenged products were certified to the Sixth Edition of the UL 217 standard. (See Mot. at 9:20.) "In June 2024," after the filing of this action, "the Sixth Edition of UL 217 was replaced by the Eighth Edition." (See id. at 19:15-20.) None of the alarms purchased by plaintiffs "were certified to the Eighth Edition," as all such alarms were purchased during the period in which Sixth Edition was in effect. (See id. at 19:21-22.)

United States District Court
Northern District of California

considered or approved" defendants' "descriptor of their ionization products as 'Smoke Alarms.'" (See id. at 25:5-7.)

The sole language plaintiffs argue constitutes an actionable misrepresentation under the CLRA is the "smoke alarm" descriptor on defendants' ionization alarms' packaging. (See SAC ¶¶ 5, 118; see also Opp. at 1:2-8; 3:13-17; 4:5-9; 19:18-19.) The requisite regulatory "Approval" and "Listing" defendants received from the State Fire Marshal are, however, for ionization-type "smoke alarms" (see Gonzalez Dec. Exs. B-14, B-15, B-16, B-17, B-18; see also Devine Decl. Ex. C-9), which makes sense, as that is what they are. Indeed, without the use of such descriptor, the approval defendants' products' received under the above-described regulatory scheme, namely, to "market, distribute, offer for sale, or sell," see Cal. Health & Safety Code § 13114(b)(1), would be, as a practical matter, meaningless, as there would be no way to inform potential purchasers as to what is in the box.

The Court thus finds California Health and Safety Code § 13114(a) and the regulations promulgated thereunder constitute a safe harbor such that the use of the "smoke alarm" descriptor cannot be condemned as false or misleading under the CLRA where, as here, the products have received approval to be sold as "smoke alarms."[6]

Accordingly, defendants' Motion for Summary Judgment is hereby GRANTED.

**IT IS SO ORDERED.**

Dated: April 6, 2026

MAXINE M. CHESNEY
United States District Judge

---

[6] If defendants, in marketing their products, had used other language on which a claim was predicated, the Court would agree that such language would not fall within the safe harbor.